**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(B) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF LIQUIDATION DESCRIBED HEREIN.   ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANYWAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

Buffey E. Klein
Texas Bar No. 24032515
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Phone:  (214) 999-6100
Fax:  (214) 888-6170
Email:  buffey.klein@huschblackwell.com

Lynn H. Butler
Texas Bar No. 03527350
**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Phone:  (512) 479-9758
Fax:  (512) 479-1101
Email:  lynn.butler@huschblackwell.com

**COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CHAPTER 11** |
| **PINE CREEK MEDICAL CENTER, LLC,** | § | |
| | § | **CASE NO. 19-33079-hdh11** |
| **Debtor.** | § | |
| | § | |

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT REGARDING ITS
CHAPTER 11 PLAN OF LIQUIDATION DATED SEPTEMBER 20, 2019**

**CONFIRMATION HEARING:**    _____ ___, 2019 AT _____

**CONFIRMATION LOCATION:    UNITED STATES BANKRUPTCY COURT
1100 COMMERCE STREET
14TH FLOOR, COURTROOM #3
DALLAS, TEXAS 75242**

**DEADLINE FOR ACCEPTING/REJECTING PLAN:    _____ ___, 2019**

**DEADLINE FOR OBJECTING TO PLAN:            _____ ___, 2019**

# I. INTRODUCTION

Pine Creek Medical Center, LLC (the "Debtor")[1] hereby submits its *First Amended Disclosure Statement Regarding its Chapter 11 Plan of Liquidation Dated September 20, 2019* (the "Disclosure Statement"), pursuant to Section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (individually, a "Rule" and collectively, the "Bankruptcy Rules") to all of its known Creditors, in support of *Pine Creek Medical Center LLC's First Amended Original Chapter 11 Plan of Liquidation Dated September 20, 2019* (the "Plan").

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. A true and correct copy of the proposed Plan is attached hereto as **Exhibit "A"**. The Plan provides for the creation of a Liquidating Trust (defined below). The Plan also provides for the transfer of all of the Debtor's Assets to the Liquidating Trust, including all claims and causes of action owned by the Debtor. The Liquidating Trust shall liquidate all of the Debtor's Assets and litigate (and continue any litigation commenced by the Debtor) all Causes of Action, including Avoidance Actions, for the benefit of the Debtor's Creditors. Finally, the Liquidating Trust and shall make distributions to such Creditors from (i) the net proceeds of the liquidation of the Debtor's Assets and (ii) the net settlement proceeds or net litigation proceeds, if any, of any Causes of Action, including Avoidance Actions.

## A. PURPOSE OF THE DISCLOSURE STATEMENT.

This Disclosure Statement is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. It is not intended to replace a careful review and analysis of the Plan, including the specific treatment you will receive under the Plan. Every effort has been made to explain fully various aspects of the Plan as it affects Creditors. If any questions arise, the Debtor urges you to contact the Debtor's counsel, and every effort will be made to resolve your questions. You may, of course, wish to consult with your own counsel.

A general discussion of the projected assets and distributions under the Plan are set out below in this Disclosure Statement. The following summary is general in nature. Creditors are referred to the full Disclosure Statement and Plan for a full discussion of these matters.

**THERE CAN BE NO ASSURANCE THAT THE VALUES AND AMOUNTS REFLECTED IN THIS ANALYSIS WILL BE REALIZED AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.**

## B. VOTING ON THE PROPOSED PLAN BY CREDITORS.

After a plan has been filed with a bankruptcy court, it must be accepted by holders of impaired claims against or interests in a debtor. Section 1125 of the Bankruptcy Code requires that a plan proponent fully disclose sufficient information about a debtor, its assets, and the plan

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *Pine Creek Medical Center LLC's First Amended Original Chapter 11 Plan of Liquidation Dated September 20, 2019* or in the Bankruptcy Code and Bankruptcy Rules.

2

to creditors and interest holders before acceptances of that plan may be solicited. This Disclosure Statement is being provided to the holders of Claims against the Debtor to satisfy the requirements of Section 1125 of the Bankruptcy Code.

The Bankruptcy Code provides that creditors and interest holders are to be grouped into "classes" under a plan and that they are entitled to vote to accept or reject a plan by class. While courts have disagreed on the proper method to be used in classifying creditors and interest holders, a general rule of thumb (which is subject to exceptions) is that creditors with similar legal rights are placed together in the same class and that stockholders with similar legal rights are placed together in the same class. For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding subordinated unsecured claims might be placed in a separate class.

The Bankruptcy Code does not require that each claimant or interest holder vote in favor of a plan for a court to confirm a plan. Rather, each class of claimants and interest holders must accept a plan (subject to the exception discussed below). A class of claimants accepts a plan if, of the claimants in the class who actually vote on a plan, such claimants holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of allowed claims vote to accept the plan. For example, if a hypothetical class has ten (10) creditors that vote and the total dollar amount of those ten (10) creditors' claims is $1,000,000.00, then for such class to have accepted the plan, six (6) or more of those creditors must have voted to accept the plan (a simple majority), and the dollar amount of claims of the creditors voting to accept the plan must total at least $666,667.00 (a two-thirds majority).

## C. CONFIRMATION OF THE PLAN.

A court may confirm a plan even though fewer than all classes of claims and interests vote to accept the plan. In this instance, the plan must be accepted by at least one "impaired" class of claims, without including any acceptance of the plan by an insider. Section 1124 of the Bankruptcy Code defines "impairment" and generally provides that a claim as to which legal, equitable, or contractual rights are altered under a plan is deemed to be "impaired."

If all impaired classes of claims and interests do not vote to accept the plan, the plan proponent is entitled to request that a court confirm the plan pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code. These "cramdown" provisions permit a plan to be confirmed over the dissenting votes of classes of claims and/or interests if at least one impaired class of claims votes to accept a plan (excluding the votes of insiders), and a court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of claims and interests. The Bankruptcy Code provides several options for a plan to be "fair and equitable" to a secured creditor. Included among these options are that the secured creditor retains its lien and receives deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the court, whichever is less. With respect to a class of unsecured claims, the requirement that a plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim.

DocID: 4835-1480-4652.3

Independent of the acceptance of a plan as described above, to confirm a plan, a court must determine that the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied. THE DEBTOR BELIEVES THAT THE PLAN SATISFIES EACH OF THE CONFIRMATION REQUIREMENTS OF SECTION 1129(a) AND, IF NECESSARY, SECTION 1129(b) OF THE BANKRUPTCY CODE.

D.      **THE SOLICITATION OF VOTES ON THE PLAN.**

The Bankruptcy Code requires that the plan proponent solicit acceptances and rejections of the proposed plan before the plan can be confirmed by the court. Before the plan proponent can solicit acceptances of the plan, the court must approve the disclosure statement and determine that the disclosure statement contains information adequate to allow creditors to make informed judgments about the plan. After court approval of the disclosure statement, the disclosure statement, the proposed plan, and a ballot are sent to the holders of claims. The creditors will then have the opportunity to vote on the plan and should consider the approved disclosure statement for such vote.

On _____ ____, 2019,[2] the Court approved the Debtor's proposed Disclosure Statement as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition for the Debtor's books and records to enable a hypothetical, reasonable investor typical of holders of Claims of the relevant Classes to make an informed judgment whether to vote to accept or reject the Plan. The Court's approval of this Disclosure Statement does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan. Likewise, although the Debtor and its counsel have utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor any of its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement. Further, nothing contained in this Disclosure Statement may be construed to be a representation or warranty, express, implied, or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the Debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized. A true and correct copy of the order approving the Disclosure Statement is attached hereto as **Exhibit "B"**.

E.      **PLAN CONFIRMATION HEARING.**

The Confirmation Hearing has been scheduled on _____ ___, 2019, at _____,[3] before the Bankruptcy Court located at 1100 Commerce Street, 14th Floor, Courtroom No. 3, Dallas, Texas 75242. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code and if the Plan should be confirmed.

**YOUR VOTE IS IMPORTANT.** In order for the Plan to be accepted, at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the **voting Creditors** in each Class must affirmatively vote for the Plan. Even if all Classes of Claims accept the Plan, the

---

[2] Date to be inserted after disclosure statement hearing.

[3] Date to be inserted after disclosure statement hearing.

Court may refuse to confirm the Plan. The Court must find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the Proponent of the Plan has also complied with the Bankruptcy Code. The Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Court must find that the Proponents of the Plan have disclosed the identity and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of Creditors and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the Debtor have been disclosed. The Court must additionally find that each Class of Claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain Priority Claims. If any Classes of Claims are impaired under the Plan, the Court must find that at least one Class of Claims that is impaired has accepted the Plan without counting any votes by insiders. The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further liquidation of the Debtor. Additionally, the Plan must provide for payment of certain required fees to the United States Trustee.

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF.**

**NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN**

**PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

## II. DESCRIPTION OF THE DEBTOR'S BUSINESS

### A. THE DEBTOR'S FORMATION.

Established in 2011 by the conversion of Pine Creek Medical Center, LLP, a Texas limited liability partnership formed in April 2003, the Debtor is a Texas limited liability company. The Debtor's principal place of business was located at 9032 Harry Hines Boulevard, Dallas, Texas 75235. The Debtor is a privately-owned Dallas, Texas-based single location physician owned surgical hospital that provided inpatient, outpatient, emergency, and other ancillary services.

As of the Petition Date, Partners Surgical of Dallas, LLC held approximately 48.7% of the membership interests of the Debtor. The remainder of the membership interests were held by approximately forty-seven (47) different parties, with no single party holding a membership interest of more than 3.1%. A complete list of all parties holding membership interests as of the Petition Date appears on the Bankrutpcy Case docket at entry number 8.

### B. THE EVENTS LEADING TO THE DEBTOR'S BANKRUPTCY FILING.

Prior to the Petition Date (defined below), the Debtor's business model was negatively impacted by the effects of the Patient Protection and Affordable Care Act,[4] macro-economic changes in the medical industry, micro-economic decisions made by prior management, various lawsuits, and a large debt obligation (in excess of $7,000,000) arising from the settlement of alleged violations of the Stark Law and Anti-Kickback Statute.[5] The actions of prior management that led to the referenced settlement required the Debtor to enter into a corporate integrity agreement with the federal healthcare regulatory agencies, which actions substantively contributed to the failure of the Debtor's business. With revenues declining and liabilities

---

[4] 42 U.S.C. § 18001, *et seq.*

increasing, the Debtor's net operating losses, totaling $4.8 million for the year through April 2019, could not continue unabated.

On April 29, 2019, the Debtor ceased admitting new patients. The following month, the Debtor's board of directors (the "Board of Directors") appointed Mark Shapiro as Chief Restructuring Officer with the directive of winding down the Debtor's operations and procuring a purchaser of the Debtor's remaining assets and/or operations as a going concern. Despite receiving serious consideration from two potential purchasers, the sale process was ultimately unsuccessful.

As of the Petition Date, the Debtor had ceased providing medical services, released or transferred all of its patients to other medical centers, and terminated all but two of its employees, an internet technology manager and a receivables accountant. Although a portion of its accounts receivable and medical equipment were sold prior to the Petition Date, the Debtor's remaining employees are working on, among other things, the collection of the remaining accounts receivable, managing of the Debtor's patient records, and addressing other HIPAA requirements.

## C.  THE DEBTOR'S PRE-PETITION DEBT STRUCTURE.

### i.  *Secured Debt*

Effective as of June 14, 2018, the Debtor entered into that certain (i) term Commercial Loan Agreement with CrossFirst Bank and (ii) Revolving Line of Credit Agreement, in the aggregate principal amount of $5,400,000.00 (collectively, the "CrossFirst Agreements"). In conjunction with entering into the CrossFirst Agreements, the Debtor granted Liens in favor of CrossFirst on substantially all of the Debtor's assets in order to secure the Debtor's obligations under the CrossFirst Agreements. As of the Petition Date, the Debtor's total outstanding obligation under the CrossFirst Agreements was $375,312.35.

### ii.  *Trade and General Unsecured Debt and Unliquidated Litigation Claims*

As of the Petition Date, the Debtor's books and records reflected approximately $20,480,925.21[5] in outstanding unsecured trade and general unsecured debt. Additionally, various unliquidated litigation claims were asserted against the Debtor prior to the Petition Date, including, but not limited to: (i) *Vonetta Carter v. William M. Carter II, MD and Pine Creek Medical Center*; Cause No. DC-19-01788 (personal injury claim); (ii) *Teresa West v. John Alexander, MD*, Cause No. DC-18-02612 (Medical Malpractice claim); (iii) *Michelle Bland v. Dirk Rodriguez, MD, Dirk Rodriguez, M.D., P.A., and Pince Creek Medical Center, LLC*, Cause No. DC-17-16698 (Medical Malpractice claims); (iv) *CPM Medical Consultants LLC and Medusa Group LLC v. Pine Creek Medical Center, LLC and Partners Surgical of Pine Creek, LLC*, Cause No. DC-19-05856 (breach of contract claim); (v) *CMR Partners, Ltd. v. Pine Creek Medical Center, LLC, Partners Surgical, LLC, and Partners Surgical of Pine Creek, LLC*, Cause No. DC-19-00429 (breach of contract claim); (vi) *Medical Management Solutions LLC v. Pine Creek Medical Center, LLC*, Cause No. DC-19-06452 (breach of contract claim); and (vii) *Smartsurg Medical*

---

[5] 42 U.S.C. §§ 1320a-7b, 1395nn.

*Supply LLC v. Pine Creek Medical Center*, Cause No. DC-19-08145 (breach of contract claim) (collectively, the "Pre-Petition Lawsuits").  As of the Petition Date, each of the Pre-Petition Lawsuits were pending in various Texas state courts located in Dallas, Texas and none of them had been liquidated.

## III.    THE DEBTOR'S BANKRUPTCY FILING

### A.    THE COMMENCEMENT OF THE DEBTOR'S BANKRUTPCY CASE.

On September 12, 2019 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor filed its petition in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.  The bankruptcy case is styled *In re Pine Creek Medical Center, LLC*, Case No. 19-33079-hdh11. United States Bankruptcy Judge Harlin DeWayne Hale presides over the Debtor's Bankruptcy Case.

### B.    THE POST-PETITION MANAGEMENT OF THE DEBTOR.

As of the Petition Date, the Debtor began operating its business and managing its property as a Debtor-in-Possession pursuant to Sections 1007 and 1008 of the Bankruptcy Code.

### C.    SIGNIFICANT POST-PETITION EVENTS.

The Debtor filed its Chapter 11 Bankruptcy Case with the intent to monetize its remaining assets and to provide for the orderly liquidation of claims against the Debtor's Bankruptcy Estate.  The following is a description of the more significant matters to have come before the Court subsequent to the Petition Date.

#### i.    *The Continued Employment of the Chief Restructuring Officer*

On September 13, 2019, the Debtor filed an *Expedited First Omnibus Motion for Entry of an Order Authorizing the Debtor to (I) Assume Executory Contract, (II) Reject One Unexpired Lease of Nonresidential Real Property and Executory Contracts as of the Petition Date, (III) Abandon Property of the Estate, and (IV) Granting Other Related Relief.*  The Court approved the Debtor's assumption of the Chief Restructuring Officer Engagement Letter Agreement, which approved the continued employment of Mark Shapiro as the Chief Restructuring Officer of the Debtor.

#### ii.    *The Debtor's Schedules and Statement of Financial Affairs*

On September 13, 2019, the Debtor filed its Schedules and Statement of Financial Affairs, detailing the Debtor's current assets and liabilities as well as its financial performance up to the Petition Date.  Creditors should review the Schedules and Statement of Financial Affairs in considering whether to vote for the Debtor's Plan.  True and correct copies of the Schedules and Statement of Financial Affairs, as amended, are attached hereto as **Exhibit "C"**. To the extent that any of the financial data contained within the Schedules or Statement of Financial Affairs is subsequently amended, those amendments will be served on all Creditors.

DocID: 4835-1480-4652.3

As of the Petition Date, the Debtor's scheduled assets totaled $5,392,170.85 consisting of the following:

1.  <u>Cash</u>: $484,496.85;

2.  <u>Anticipated collectible accounts receivable</u>: $4,849,674.00 consisting of amounts related to both (a) the sale of property (b) and medical accounts receivable; and

3.  <u>Other assets</u>: $58,000.00.

The Debtor also identified the following assets:

1.  <u>Avoidance Actions</u>: $843,815.83 in potentially avoidable transfers made in the 90-day period immediately prior to the Petition Date and $1,451,527.70 in potentially avoidable transfers made to insiders in the 1-year period immediately prior to the Petition Date. However, the Debtor has not conducted an investigation into the merit of or potential recoveries that might be expected on such claims;

2.  <u>Claims and Causes of Action Against Prior Management of the Debtor</u>: an investigation of potential claims and causes of action against the entities that served as the management company of Pine Creek is ongoing at this time. The Debtor believes there to be insurance coverage in place for certain of the Debtor's prior management for such claims. However, the investiation remains ongoing and the value, if any, of such potential claims and causes of action is currently unknown.

### iii. *Application to Employ Husch Blackwell LLP as Debtor's Bankruptcy Counsel*

On September 16, 2019, the *Debtor's Application for an Order Authorizing the Retention of Husch Blackwell LLP as Counsel for the Debtor* was filed. Subsequently, the Bankruptcy Court approved the Debtor's application and authorized the retention of Husch Blackwell, LLP as the Debtor's bankruptcy counsel. As a professional retained under Section 327 of the Bankruptcy Code, Husch Blackwell LLP will be entitled to seek interim and final compensation from the Debtor's Bankruptcy Estate upon a duly noticed application and after a hearing before the Court.

### iv. *Post-Petition Operations and Revenue*

It is anticipated that the Debtor will generate revenue through the liquidation of its assets, including, but not limited to, the collection of accounts receivable, sufficient to meet all of the Debtor's current expenses, as well as all proposed payments required under the Plan as of the Effective Date. The Debtor's income statement forecast is attached hereto as **Exhibit "D"**.

Subsequent to the Petition Date, the Debtor has collected approximately $2,088,366.00 in receivables related to the sale of property and $184,326.92 in medical accounts receivable. Thus,

as of October 29, 2019, the Debtor has outstanding accounts receivable with a book value of approximately $2,212,590.68.

As part of its collection efforts, the Debtor has undertaken an investigation of the historical collections practices related to its medical accounts receivable. To date, the investigation has revealed significant deficiencies on the part of both the (a) vendor (National Billing Partners) utilized by Pine Creek's former management company, Partners Surgical of Dallas, LLC ("Partners Surgical") and (b) management company utilized by the Debtor immediately prior to retaining Partners Surgical. Due to concerns related to the integrity of the medial accounts receivables records, the Debtor has undertaken a complete audit of its more than seven thousand (7,000) records in order to determine both the validity and collectability of the receivables. While that review remains ongoing, the Debtor has found instances in which (i) claims related to the receivables were not timely filed and (ii) receivables remained on the books despite having been paid or determined to be uncollectable.

Based upon the results of the audit to date, the Debtor believes (a) the book value of its medical accounts receivable, as listed in its bankruptcy schedules, to be overstated; (b) that future collections on the valid medical accounts receivable will be realized at a significant discount of book value, based upon the Debtor's historical collections data; and (c) that it may have Claims or Causes of Action related to the collection of its medical accounts receivable, against National Billing Partners and the Debtor's former management companies (the "AR Claims"). National Billing Partners ("NBP") was retained in October 2018 to manage the Debtor's accounts receivable. Prior to NBP's retention, accounts receivable was managed internally by the Debtor under the direction of prior management.

> *v.* *The Establishment of the Bar Date for Filing Claims*

The Bar Date in the Bankruptcy Case is January 8, 2020, for non-governmental entities, and March 11, 2020, for governmental entities. Although the Debtor does not know yet what claims will be filed or ultimately allowed, the Debtor anticipates that the Creditors listed in its Schedules will file claims in the amounts set forth in the Schedules.

## IV. PLAN OVERVIEW AND ANTICIPATED DISTRIBUTIONS

The Plan contemplates the liquidation of all of the Debtor's assets followed by the distribution of all resulting proceeds to the Debtor's creditors. To effectuate the liquidation of assets and distribution of proceeds, the Plan provides for the creation of a Liquidating Trust (defined below). In addition to the liquidation of assets, the Liquidation Trust will also pursue all claims and Causes of Action owned by the Debtor and its Bankruptcy Estate. More specifically, the Liquidating Trust shall (i) continue any litigation commenced by the Debtor and (ii) litigate all Causes of Action, including Avoidance Actions, for the benefit of the Debtor's creditors and shall make distributions to such creditors based upon the net settlement proceeds or net litigation proceeds, if any, resulting therefrom.

DocID: 4835-1480-4652.3

The Plan provides for the following payments:

1.     Allowed Administrative Claims:  Full payment, in cash, on the Effective Date, or as otherwise agreed;

2.     Allowed Case Professionals Claims:  Full payment, in cash, on the entry of orders approving the final fee applications of such Case Professionals;

3.     Allowed Priority Tax Claims:  Full payment, in cash, on the Effective Date, or as otherwise agreed;

4.     Allowed Priority Non-Tax Claims:  Full payment, in cash, as required by the Bankruptcy Code;

5.     Allowed Secured Property Tax Claims:  Full payment, in cash, within thirty (30) days after the Effective Date  of the Plan, with applicable interest under state law and Section 511 of the Bankruptcy Code;

6.     Allowed Secured Claims:  To the extent that a Secured Claim is finally allowed and to the extent that a Secured Claim has not been previously paid in full, the Debtor will pay the holder of an Allowed Secured Claim an amount equal to the allowed amount of the Secured Claim, which will be equal to the value, as of the Effective Date, of at least the value of such holder's interest in the Debtor's interest in such property.  To the extent that the Debtor sells, subject to Section 363(k) of the Bankruptcy Code, any property that is subject to the lien securing a Secured Claim, free and clear of such lien, such lien will attach to the proceeds of such sale;

7.     Allowed General Unsecured Claims:  General Unsecured Creditors not within a previously described class will be paid on a pro-rata basis from the funds generated from the proceeds from the liquidation and sale of the Debtor's assets and the proceeds of any litigation or asset administered by the Liquidating Trust unitl paid in full, after the payment of the Allowed Claims identified above; and

8.     Prepetition Equity Interests in Debtor:  The Membership Interests of the Debtor will be extinguished by operation of the Confirmation Order.

Each Executory Contract and unexpired lease to which the Debtor is a party and that has not been previously assumed or rejected shall be deemed rejected, unless expressly assumed pursuant to the Plan.

## V.     PLAN SUMMARY

As provided in Section 1123(a) of the Bankruptcy Code, Administrative Claims shall not be classified for purposes of voting on the Plan.  The Allowed Claims against the Debtor are classified as set forth in this Article.  A Claim is in a particular Class only to the extent that such Claim fits within the description of such Class, and is in such other and different Class or Classes to the extent that the remainder of such Claim fits within the description of such other Class or

Classes. Any dispute with respect to classification of Claims or impairment shall be resolved by the Court upon motion of the holder of such Claim affected thereby, with notice to the Debtor.

The Plan shall only provide Distributions to holders of Allowed Claims; except as expressly provided herein nothing within the Plan shall allow any Claim. The Allowed Claims are classified as follows:

Class 1: ALLOWED PRIORITY TAX CLAIMS;

Class 2: ALLOWED PRIORITY NON-TAX CLAIMS;

Class 3: ALLOWED SECURED PROPERTY TAX CLAIMS;

Class 4: ALLOWED SECURED CLAIMS;

Class 5: ALLOWED GENERAL UNSECURED CLAIMS; and

Class 6: EQUITY INTERESTS IN DEBTOR.

Additionally:

1. Upon Confirmation, the Debtor's Causes of Action shall vest in the Liquidating Trust. The Liquidating Trust shall litigate (and continue any litigation commenced by the Debtor) all Causes of Action, including Avoidance Actions, for the benefit of holders of Allowed Claims. The Liquidating Trust shall make distributions to holders of Allowed Claims based upon the settlement or final judgment of any Causes of Action, including Avoidance Actions. The Trustee will temporarily forego prosecution of Avoidance Actions to the extent that any potential target of a possible Avoidance Action signs an agreement that tolls the applicable statute of limitations pending the Trustee's full performance under the Plan;

2. Each Executory Contract and unexpired lease to which the Debtor is a party and that has not been previously assumed or rejected shall be deemed rejected, unless expressly assumed pursuant to the Plan. The Debtor reserves the right to identify additional Executory Contracts and unexpired leases to be assumed pursuant to the Plan. The final list of Assumed Agreements will be included with the Plan Supplement that will be filed on or before ten (10) days prior to the Confirmation Hearing;

3. All objections to Claims not allowed herein must be filed within ninety (90) days following the Effective Date of the Plan, unless extended by the Bankruptcy Court;

4. Claims in Classes 3 through 5 are impaired under the Plan, and therefore shall be entitled to vote to accept or reject the Plan. If a controversy arises as to whether any Claim or any Class of Claims is impaired under the Plan, the Court shall, upon notice and a hearing, determine such controversy. Any impaired Class that is not occupied by an Allowed Claim or a Claim temporarily allowed pursuant to

DocID: 4835-1480-4652.3

Rule 3018 as of the date of the Confirmation Hearing, shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan and determining whether the Plan has been accepted by such Class under Section 1129 of the Bankruptcy Code;

5.   The Effective Date of the Plan will be the first business day after the expiration of the twenty-first (21st) day after the entry of the Confirmation Order confirming the Plan; provided, however, that the Confirmation Order is a Final Order; and

6.   The distribution of the proceeds generated from the (1) liquidation of the Debtor's assets and (2) the prosecution of the Debtor's and/or Estate's Causes of Action is anticipated to be governed by Section 726 of the Bankruptcy Code.

## A.   TREATMENT OF ALLOWED CLAIMS.

### i.   *Administrative Claims*

**Administrative Claims**.  Except to the extent that any entity entitled to payment of any Allowed Administrative Claim agrees to different treatment, each holder of an Allowed Administrative Claim (including allowed claims under Section 503(b)(9) of the Bankruptcy Code) shall receive from the Debtor either: (i) the amount of such Allowed Administrative Claim in one Cash payment on Effective Date or (ii) such other treatment as may be agreed upon in writing by the Debtor and the holder of the Allowed Administrative Claim.  An Allowed Administrative Claim representing a liability incurred in the ordinary course of business of the Debtor shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

**Administrative Claim Bar Date**.  The Plan constitutes a motion to fix and establish an administrative bar date (the "Administrative Claim Bar Date") of thirty (30) days following the Effective Date.  Upon entry of the Confirmation Order and the occurrence of the Effective Date, the Debtor shall provide notice of such Administrative Claim Bar Date to all entities on the Debtor's creditor matrix and every Person that may assert an Administrative Claim against the Debtor, according to the Debtor's books and records.

**Administrative Claim Objection Deadline**. The Plan constitutes a motion to fix and establish a deadline to object to timely filed Administrative Claims, such deadline being thirty (30) days following the Administrative Claim Bar Date.

**Administrative Claim Reserve**.  On the Effective Date, the Trustee will fund the Administrative Claim Reserve in an amount sufficient to pay all Allowed Administrative Claims in full as shown on the Debtor's books and records (other than those Administrative Claims to be paid in the ordinary course of business of the Trustee).  The funds in the Administrative Claim Reserve shall be released and paid over to those holders of Allowed Administrative Claims.  Any funds remaining in the Administrative Claim Reserve following payment of All Allowed Administrative Claims shall be released to the Trustee for further distribution in accordance with the Plan.

DocID: 4835-1480-4652.3

ii. *Professionals Claims*

**Professionals Claims**. Any Professionals Claims approved by the Court, and not previously paid pursuant to any orders approving such payments, shall be paid in Cash in such amounts as are Allowed by Final Order of the Court: (i) within seven (7) days following the date such Professionals Claims become Allowed Administrative Claims or (ii) upon such other terms as may be mutually agreed upon between the holders of such Professionals Claims and the Trustee.

**Professionals Claims Bar Date**. The Plan constitutes a motion to fix and establish a bar date for the filing of final applications of Professionals for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date (the "Professionals Claims Bar Date"). All Professionals seeking compensation for unpaid services rendered or reimbursement of expenses incurred through and including the Effective Date shall file their respective Final Fee Applications no later than the Professionals Claims Bar Date, which shall be the thirtieth (30th) day following the Effective Date. Upon entry of the Confirmation Order and the occurrence of the Effective Date, the Debtor shall provide notice of such Professionals Bar Date to every Person that may assert a Claim for Professional Claims against the Debtor.

**Professionals Claims Objection Deadline**. The Plan constitutes a motion to fix and establish a deadline to object to timely filed Professionals Claims, such deadline being thirty (30) days following the Professionals Claims Bar Date.

**Professionals Account**. On the Effective Date, the Trustee will fund the Professionals Account in an amount sufficient to pay all Allowed Professionals Claims, as shown in the Debtor's books and records, in full.

**United States Trustee Fees**. All fees owing to the United States Trustee under 28 U.S.C. § 1930 shall be paid by the Debtor or Trustee in Cash as such fees become due.

iii. *Classified Claims*

**Class 1: Allowed Priority Tax Claims.** This Class shall consist of the Allowed Claims of unsecured priority tax creditors, and such Allowed Claims shall be paid as set forth below. The Debtor is unaware of the existence of any Claims in this Class.

Treatment. To the extent that such Claims exist, Allowed Priority Tax Claims will be paid with the proceeds of the liquidation of the Debtor's assets. Proceeds will be distributed on the Effective Date pursuant to priorities in Section 726 of the Bankruptcy Code. To the extent Allowed Claims in Class 1 are not paid in full on the Effective Date and that proceeds from the liquidation of the Debtor's remaining assets are received by the Liquidating Trust, such proceeds will be distributed to the holders of the Allowed Priority Tax Claims within thirty (30) days of receipt of such proceeds by the Liquidating Trust pursuant to the priorities established by Section 726 of the Bankruptcy Code, until such time as the Allowed Priority Tax Claims are paid in full.

DocID: 4835-1480-4652.3

<u>Impairment and Voting</u>.  The Allowed Priority Tax Claims are not classified for purposes of voting and will not be entitled to vote on the Plan.

**Class 2:   Allowed Priority Non-Tax Claims.**  This Class shall consist of Allowed Priority Non-Tax Claims arising under Section 507(a)(4), (5), or (7) of the Bankruptcy Code. The Debtor is unaware of the existence of any Claims in Class 2.

<u>Treatment</u>.  To the extent that such Claims exist, each holder of an Allowed Priority Non-Tax Claim shall be paid with the proceeds of the sale of the Debtor's assets. Proceeds will be distributed on the Effective Date pursuant to priorities in Section 726 of the Bankruptcy Code.  To the extent Allowed Claims in Class 2 are not paid in full on the Effective Date and that proceeds from the liquidation of the Debtor's remaining assets are received by the Liquidating Trust, such proceeds will be distributed to the holders of the Allowed Priority Non-Tax Claims within thirty (30) days of receipt of such proceeds by the Trustee pursuant to the established by Section 726 of the Bankruptcy Code, until such time as the Allowed Priority Non-Tax Claims are paid in full.

<u>Impairment and Voting</u>.  The Allowed Priority Non-Tax Claims are not classified for purposes of voting and will not be entitled to vote on the Plan.

**Class 3:   Allowed Secured Property Tax Claims.**  This Class shall consist of Allowed Secured Property Tax Claims owed to Dallas County.  These claims are Secured pursuant to Chapter 32 of the Texas Tax Code.

<u>Treatment</u>.  The Allowed Secured Property Tax Claim of Dallas County will be paid in full within thirty (30) days of the Effective Date of the Plan, together with interest accruing at the rate required by Section 511 of the Bankruptcy Code.  The Debtor shall pay the Allowed Secured Property Tax Claims from the proceeds of the liquidation of the Debtor's assets.

<u>Impairment & Voting</u>.  Class 3 is impaired.  Acceptance of the Plan from holders of Class 3 Claims will be solicited.

**Class 4:   Allowed Secured Claims**.  This Class shall consist of Allowed Secured Claims of the Debtor.  An allowed claim of a Creditor secured by a Lien on property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, is a Secured Claim to the extent of the value of such Creditor's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an Unsecured Claim to the extent that the value of such Creditor's interest or the amount so subject to setoff is less than the amount of such Allowed Claim.  Allowed Secured Claims will be impaired under the Plan.

<u>Treatment</u>:  To the extent that a Secured Claim is finally allowed and to the extent that a Secured Claim has not been previously paid in full, the Debtor will pay the holder of an Allowed Secured Claim an amount equal to the allowed amount of the Secured Claim, which will be equal to the value, as of the Effective Date, of at least the value of such holder's interest in the Debtor's interest in such property.  To the extent that the Debtor sells, subject to Section 363(k) of the Bankruptcy Code, any property that is

15

subject to the Lien securing a Secured Claim, free and clear of such Lien, such Lien will attach to the proceeds of such sale.

Impairment and Voting: Class 4 is impaired. Acceptance of the Plan from holders of Class 4 claims will be solicited.

**Class 5: Allowed General Unsecured Claims.** This Class shall consist of all allowed prepetition claims that are not in Classes 1, 2, 3, 4, or 6.

Treatment: Allowed Claims in Class 5 will be paid on a Pro Rata basis from the funds generated from the proceeds from the liquidation of the Debtor's assets and the prosecution of Causes of Action, after the payment in full of all Allowed Claims in Classes 1 through 4. After the Effective Date of the Plan, the Liquidating Trust will continue to (a) liquidate the assets of the Debtor and/or Estate and (b) pursue Causes of Action, including, but not limited to Avoidance Actions. Upon liquidation of such assets and the recoveries on Causes of Action, provided that there are adequate funds available, the Liquidating Trust will make a quarterly distribution to the holders of Allowed Claims in Class 5. The Liquidating Trust, may, in its sole discretion, make interim distributions to the holders of Allowed Claims in Class 5.

Impairment and Voting: Class 5 is impaired. Acceptance of the Plan from holders of Class 5 claims will be solicited.

**Class 6: Equity Interests in Debtor.** This Class shall consist of all Membership Interests in the Debtor.

Treatment: The Membership Interests in Class 6 will be extinguished by operation of the Confirmation Order.

Impairment and Voting: Class 6 is impaired. Acceptance of the Plan from holders of Class 6 Claims will not be solicited.

**B. PROVISIONS RELATING TO DISTRIBUTIONS TO CREDITORS.**

*i.* *Delivery of Distributions*

Any distribution to be made to a Creditor will be sent to that Creditor at:

a. the address set forth on the proof of claim filed for such Creditor;

b. the address set forth in any written notice of change of address delived to the Trustee after the date of any related Proof of Claim;

c. if no proof of claim is filed, the address set forth on the Debtor's Schedules; or

d. the address reflected in the Register as of the applicable Record Date.

16

*ii.* *Undeliverable and/or Unclaimed Distributions*

Any distribution to be made to a Creditor will be sent to that Creditor at the address set forth on the proof of claim filed for such Creditor, or if no proof of claim is filed, at the address set forth on the Debtor's Schedules. In the event that a distribution is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Trustee shall hold such distribution for the affected Creditor for a period of sixty (60) days following the Distribution Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the sixty-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Trustee for distribution to the other remaining Creditors.

All uncashed Distributions shall be handled as set forth below, unless provided otherwise by applicable law. Checks issued by the Debtor or Trustee in respect of any Allowed Claim shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. The holder of the Allowed Claim to whom such check originally was issued shall make a request for re-issuance of any check to the Trustee. Any claim with respect of such a voided check shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check; provided, however, checks issued for the Final Distribution that become null and void in accordance with the provisions contained herein shall not be re-issued and the holders of such Claims shall waive any right to the re-issuance of such checks. After such date, all funds held on account of such voided check shall be remitted to the Trustee; the holder of any such Claim shall not be entitled to any other or further Distribution under the Plan on account of such Claim and such Claim shall be deemed disallowed for purposes of any such Distribution.

## C.    OBJECTIONS TO PROOFS OF CLAIM.

Except as otherwise provided in the Plan in connection with Administrative Claims and Professionals Claims, objections to Claims filed prior to the Bar Date must be filed with the Court and served in accordance with the Bankruptcy Rules by the later of (i) ninety (90) days following the Effective Date or (ii) thirty (30) days following the date such proof of Claim was timely filed; otherwise, such Claims shall be deemed Allowed in accordance with Section 502 of the Bankruptcy Code, unless an extension of such time period is sought by the Trustee.

## D.    THE CREATION OF THE LIQUIDATING TRUST.

The Plan contemplates the continued liquidation of the Debtor's assets and the prosecution of Causes of Actions belonging to the Debtor and/or Bankruptcy Estate. The proceeds realized from the liquidation of the Debtor's assets and the prosecution of such litigation will be distributed pursuant to the terms of the Plan.

*i.* *The Appointment of the Trustee*

Upon Confirmation and by operation of the confirmed Plan, the Pine Creek Medical Center, LLC Plan Trust (the "Liquidating Trust") will be created and Kevin D. McCullough of

DocID: 4835-1480-4652.3

Rochelle McCullough will become a post-confirmation trustee (the "Trustee") over the Liquidating Trust. A true and correct copy of the Pine Creek Medical Center, LLC Liquidating Trust Agreement and Declaration of Trust (the "Liquidating Trust Agreement") is attached hereto as **Exhibit "E"**.

The Trustee, serving as a post-confirmation trustee, will have all of the powers and duties set out in Section 1106 of the Bankruptcy Code and will be fully authorized to operate the Liquidating Trust to the same extent and capacity as the Debtor is currently operating its affairs pursuant to Section 1108 of the Bankruptcy Code. The Trustee, as post-confirmation trustee, will be specifically authorized to execute and all documents and enter into all transactions necessary to effectuate the provisions of the confirmed Plan. The Trustee will be compensated pursuant to Section 326 of the Bankruptcy Code, unless other terms are approved by the Bankruptcy Court at the Confirmation Hearing and as set forth in the Confirmation Order. Until such time as the Debtor's Bankruptcy Case is dismissed or closed, the Trustee will continue to have the managerial authority necessary to implement the terms of the Plan and any orders of the Court.

### ii. *The Creation of the Creditor Oversight Committee*

The Liquidation Trust Agreement contemplates the establishment of a committee made up of certain Creditors holding Allowed Unsecured Claims (the "Creditor Oversight Committee"). The Creditor Oversight Committee shall be responsible for overseeing the Trustee's administration of the assets of the Liquidation Trust in compliance with the Plan, Confirmation Order, and Liquidation Trust Agreement and for the wind down of the Estate, closing of the Bankrutpcy Case, and the dissolution of the Debtor entity. The initial members of the Creditor Oversight Committee will be appointed pursuant to the Plan and Confirmation Order.

### E. PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS & EXECUTORY CONTRACTS AND LEASES.

### i. *Distributions on Allowed Claims Only*

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim. If a Disputed Claim becomes an Allowed Claim, the Trustee will make a distribution in accordance with the terms of the Plan applicable to Claims of the Class in which that Claim is placed.

### ii. *The Establishment of the Disputed Claims Reserve*

On the occasion of each payment required under the Plan, the Trustee, shall deposit Cash in a segregated, interest bearing account in such amount necessary to pay all Disputed Claims in accordance with the terms of the Plan if such Claims were to become Allowed Claims. This account shall be called the Disputed Claim Reserve. The Trustee shall hold the Disputed Claim Reserve in trust for the benefit of the holders of Allowed Claims whose Distributions are unclaimed and the holders of Disputed Claims pending determination of their entitlement thereto

18

under the terms of the Plan.  When a Disputed Claim becomes an Allowed Claim, the Trustee shall release and deliver the Distributions reserved for such Allowed Claims (net of distribution costs) from the Disputed Claim Reserve.  To the extent of any funds exist in the Disputed Claim Reserve after resolution of all Disputed Claims and distribution to all Allowed Claims, such funds shall be released to the Trustee for distribution to the other remaining Creditors.

      iii.      *The Assumption or Rejection of Executory Contracts and Leases*

All Executory Contracts or unexpired leases that have not been previously assumed or rejected by the Debtor shall be deemed rejected by the Debtor purusant to Sections 365(a) and 1123 of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute approval of such rejection of these Executory Contracts or unexpired leases.

      iv.      *Claims Relating to the Rejection of Executory Contracts and Leases*

If the rejection of an Executory Contract or unexpired lease gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is an Allowed Claim, shall be classified in Class 5 as a General Unsecured Claim; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Trustee, their successors or properties, unless a proof of Claim is Filed and served on the Debtor and Trustee within thirty (30) days after the Effective Date.

**F.**      **DISTRIBUTIONS UPON THE ALLOWANCE OR DISALLOWANCE OF DISPUTED CLAIMS.**

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim.  If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim.  If a Disputed Claim becomes an Allowed Claim, the Trustee will make a distribution in accordance with the terms of the Plan applicable to Claims of the Class in which that Claim is placed.

**G.**      **EFFECT OF CONFIRMATION.**

      i.      *The Confirmation Order*

The Bankruptcy Court shall not enter a Confirmation Order unless and until the Confirmation Order shall be reasonably acceptable in form and substance to the Debtor.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor, as well as the Debtor's assets and properties.  Thereafter, the Bankruptcy Court shall continue to maintain jurisdiction including, but not limited to:

      1.      To determine any and all objections and proceedings involving the allowance, estimation, classification, and subordination of a Claim, including any counterclaim;

      2.      To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

3.  To determine any applications pending on the Effective Date for the rejection or assumption of Executory Contracts or unexpired leases or for the assumption and assignment, as the case may be, of Executory Contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

4.  To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date;

5.  To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

6.  To determine all controversies, suits, disputes, and proceedings that may arise in connection with the interpretation, enforcement, consummation, or performance of the Plan or any Person's obligations thereunder;

7.  To determine all controversies, suits, disputes, and proceedings that may arise in connection with the Plan;

8.  To hear and determine any Claim belonging to the Debtor, and to consider and act on the compromise and settlement of any other Claim against, or cause of action asserted by, the Debtor;

9.  To recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

10. To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the date that any final distribution is made);

11. To enter a Final Decree closing the Case;

12. To issue orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; and

13. To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

DocID: 4835-1480-4652.3

ii.     _Discharge_

In that the Plan provides for the liquidation of all or substantially all of the assets of the Debtor and/or Bankrutpcy Estate, the Debtor will not receive a discharge under Section 1141 of the Bankruptcy Code. However, all prepetition contractual relationships between the Debtor and its Creditors will be subject to the terms and conditions of the Plan, with any and all litigation, pending against the Debtor as of Effective Date, deemed resolved and restructured by the provisions of the Plan, and all such pending litigtion shall be dismissed with prejudice immediately after the Effective Date.

iii.    _Binding Effect_

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor and its respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

iv.     _Retention of Claims and Causes of Action_

**THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE BANKRUPTCY ESTATE, INCLUDING AVOIDANCE ACTIONS. ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED AND TRANSFERRED TO THE LIQUIDATING TRUSTEE AND TRUSTEE UNDER THE PLAN. ADDITIONALLY, THE PLAN DOES NOT AND IS NOT INTENDED TO RELEASE ANY CAUSES OF ACTION.**

Any and all Causes of Action which the Debtor or Estate may have, including, but not limited to Avoidance Actions and the AR Claims, which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate to be conveyed to the Trust in accordance with the Plan. After the Effective Date, the Trustee, in its sole discretion, shall evaluate the potential Causes of Action including, but not limited to, Avoidance Actions and determine whether to pursue any such Causes of Action for the benefit of the holders of Allowed Claims.

The Trustee may prosecute, compromise, or otherwise resolve any and all Causes of Action, including Avoidance Actions and AR Claims, that the Trustee determines should be pursued. The Trustee shall retain counsel on an appropriate basis to prosecute any Causes of Action, including Avoidance Actions and AR Claims. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action including Avoidance Actions and approve any settlement thereof. The Net Proceeds of the Causes of Action, including the Avoidance Actions, shall be distributed, first, in payment of the litigation fees and expenses of the Trustee, and, second, for distribution to the holders of Allowed Claims pursuant to the Plan.

The Debtor's Statement of Financial Affairs identifies the parties who received payments and transfers from the Debtor, which payments and transfers may be avoidable under the Bankruptcy Code. In particular, the Statement of Financial Affairs identifies those parties that

DocID: 4835-1480-4652.3

received transfers from the Debtor during the ninety (90) days preceding the Petition Date, which transfers may be avoidable under Chapter 5 of the Bankruptcy Code. The Debtor may have Causes of Action, including Avoidance Actions, against those entities listed in the Statement of Financial Affairs. The Trustee may prosecute, compromise, or otherwise resolve any and all Causes of Action, including Avoidance Actions, against the above-listed creditors.

**ADDITIONALLY, YOU MAY BE SUED IF:**

1. You were or are a creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date;

2. You were an insider of the Debtor and you received a payment on a prior debt within one (1) year before the Petition Date;

3. You received any payments or property from the Debtor for goods or services you did not deliver or provide before the Petition Date;

4. You received any payments of property from the Debtor without providing reasonably equivalent value;

5. You received pre-payments, advances, or deposits from the Debtor which you did not earn;

6. You were involved in pending litigation with the Debtor at the time of the Petition Date or have been sued thereafter;

7. You owe the Debtor any money under a contract or as a result of your breach of contract with the Debtor;

8. Potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement;

9. The Debtor has any claims against you under state or federal law, whether in contract or in tort, whether known or unknown;

10. You were an officer, director, manager, or controlling person or entity of the Debtor at any time;

11. You contracted with the Debtor for goods or services in an illegal or unlawful contract, including unlawful medical director agreements; or

12. You were a prepetition professional of the Debtor contracted to provide legal, financial, accounting, or regulatory advice to the Debtor.

13. You are National Billing Partners, the prior billing company of the Debtor.

14. You are CMR, the prior management company of the Debtor.

DocID: 4835-1480-4652.3

15.     You are Partners Surgical of Dallas, LLC.

After the Effective Date, the Trustee shall prosecute, compromise, or otherwise resolve any and all Causes of Action, including Avoidance Actions, that the Trustee determines should be pursued. The Trustee shall retain counsel on an appropriate basis to prosecute any Causes of Action, including the Avoidance Actions. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action including Avoidance Actions and approve any settlement thereof. The net proceeds of the Causes of Action, including Avoidance Actions, shall be distributed, first, in payment of the litigation fees and expenses of the Trustee, and, second, for distribution to the holders of unpaid Allowed Claims pursuant to the terms of the Plan.

Additionally, in accordance with Section 1123(b)(3) of the Bankruptcy Code and under the Plan, the Trustee and the Liquidating Trust will be vested with the right to object to proofs of Claim. The Liquidating Trust shall have the right and power to object to proofs of Claim or Claims including those deemed allowed under Section 1111(a) of the Bankruptcy Code on any ground, including those set forth in Section 502 of the Bankruptcy Code. **THE RIGHT TO OBJECT TO ANY CREDITOR'S CLAIM IS RESERVED IN FAVOR OF THE LIQUIDATING TRUST REGARDLESS OF WHETHER THE CREDITOR HAS VOTED IN FAVOR OF OR AGAINST THE PLAN.**

### v.     *Continuing Investigation*

The Debtor's schedules of assets and liabilities and statement of financial affairs identify creditors whose Claims are disputed and, as discussed above, identify potential Avoidance Actions and claims against the Debtor's former management companies. The investigation of potential objections to Claims, Avoidance Actions, AR Claims, and other Causes of Action has not been completed. On the Effective Date, the results of the Debtor's investigations will be transferred to the Trustee.

**THE PLAN DOES NOT AND IS NOT INTENDED TO RELEASE ANY SUCH RIGHTS AND CAUSES OF ACTION ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST. FURTHER, NOTHING HEREIN IS INTENDED TO PREVENT THE CONTINUED LITIGATION OF CLAIMS.**

### vi.     *Prosecution of Causes of Action*

After the Effective Date, the Trustee, in its sole discretion, shall evaluate the potential Causes of Action, including Avoidance Actions, AR Claims, and potential claims against the Debtor's former management companies and insiders, and determine whether to pursue any such Causes of Action for the benefit of the holders of Allowed Claims. As discussed above, the Debtor's Statement of Financial Affairs identifies the (a) parties who received payments and transfers from the Debtor within ninety (90) days of the Petition Date and (b) insiders that received payments from the Debtor within one (1) year of the Petition Date. Additionally, the Liquidating Trust will continue to litigate, compromise, or otherwise resolve any Causes of Action, including Avoidance Actions, Commenced by the Debtor prior to the Effective Date.

DocID: 4835-1480-4652.3

vii.    _Effective Date of the Plan_

The Effective Date shall be the twenty-first (21st) day after the entry of an order confirming the Plan; provided, however, that the Confirmation Order is a Final Order; and further provided, however, that the conditions precedent set forth in the Plan have been duly satisfied.  The Debtor will serve notice of the Effective Date to all creditors and parties-in-interest.

**H.      SUMMARY OF OTHER PROVISIONS OF THE PLAN.**

i.    _Classes and Subclasses_

Any impaired Class that is not occupied as of the date of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed pursuant to Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan and determining whether the Plan has been accepted by such class pursuant to Section 1129 of the Bankruptcy Code.

ii.    _Modification of the Plan_

Modifications of the Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after Confirmation and before its substantial Consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Court after notice and hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

At any time after the Confirmation Date, the Trustee, without the approval of the Court, may modify the Plan to remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of the Plan, provided that such modification does not materially or adversely affect the interest of Creditors.

iii.    _Deemed Acceptance to Modifications_

A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

iv.    _Revocation of Plan_

The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other

Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

v. _Exemption from Transfer Taxes_

Pursuant to Section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

vi. _Payment of Statutory Fees_

All fees payable pursuant to Chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid when due.

vii. _Conditions Precedent to the Effectiveness of the Plan_

The effectiveness of the Plan is subject, in addition to the requirements provided in Section 1129 of the Bankruptcy Code, to satisfaction of the following conditions precedent:

a. All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;

b. The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Trustee to be necessary to implement the Plan; and

c. Entry of a Confirmation Order that is a Final Order in form and substance acceptable to the Trustee.

viii. _Material Default Provisions_

A failure to make a payment to the holder of an Allowed Claim timely, pursuant to the terms of the Plan, shall be an "Event of Default." Following an Event of Default, each holder of an Allowed Claim shall have the right to enforce their rights under the Plan by sending a written "Notice of Default" to the Trustee at the following addresses:

To the Trustee:

Kevin D. McCullough, Trustee
Rochelle McCullough, LLP
Republic Tower
325 N. Saint Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Toll Free: (866) 430-0182
Fax: (214) 953-0185
kdm@romclawyers.com

with a copy to:

Buffey E. Klein
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Office: 214.999.6152
Fax: 214.999.6170
Email: buffey.klein@huschblackwell.com

Subject to the applicable provisions of the Plan, if the Event of Default is not cured within fourteen (14) days after service of a written Notice of Default, then a "Material Default" shall have occurred and the holder of an Allowed Claim having provided such Notice of Default may: (i) enforce the entire amount of its claim and (ii) seek such relief as may be appropriate in any court of competent jurisdiction.

## VI. TAX CONSIDERATIONS

Because the tax consequences of the Plan may vary based on individual circumstances, each holder of an Allowed Claim is urged to consult with its own tax advisor as to the consequences of the Plan to it under federal and applicable state, local, and foreign tax laws.

## VII. ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A. VOTING REQUIREMENTS FOR CONFIRMATON

The Bankruptcy Code provides that any class of creditors or stockholders whose rights are "impaired" (in general terms, not fully honored) under a proposed plan has the right to vote, as a class, to accept or reject the plan. A class of creditors accepts a plan if more than one-half (1/2) of the ballots that are timely received from members of the class, representing at least two-thirds (2/3) of the dollar amount of claims for such ballots that are timely received, are cast in favor of the plan. If a plan impairs any class of claims, then at least one class of impaired claims must vote to accept the plan in order for it to be confirmed.

DocID: 4835-1480-4652.3

**B.** **VOTING PROCEDURES.**

i.    *Submission of Ballots*

Each Creditor whose Class of Claim is impaired will receive, with this Disclosure Statement, a form of ballot entitled "BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S PLAN" to be used in voting whether to accept or reject the Plan. A pre-addressed envelope for returning the ballot is enclosed for your convenience. Holders of unimpaired Claims and Claims that are not required to be classified are NOT entitled to vote under the Bankruptcy Code and votes by holders of such unimpaired and unclassified Claims are not being solicited.

Each holder of an Impaired Claim should first review this Disclosure Statement and the Plan and then complete the ballot. Each such holder of an Impaired Claim shall be entitled to cast one (1) ballot for accepting or rejecting the Plan. All votes to accept or reject the Plan must be cast by using the ballot provided, or a copy of such ballot. The ballot must be signed by the Creditor, or an officer, partner, or authorized agent of the Creditor. If a ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, corporate officer, or other acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and submit proper evidence satisfactory to the Debtor of his authority to so act when the ballot is returned.

Completed and signed ballots must be returned to the Debtor's attorney via electronic transmission or United States first-class mail to the following address:

Husch Blackwell LLP
c/o Penny Keller
111 Congress Ave., Ste. 1400
Austin, Texas 78701
Phone (512) 472-5456
Fax (512) 479-1101
penny.keller@huschblackwell.com

Ballots should be returned as soon as possible, and in any event must be returned so that they are actually received by 5:00 p.m., central time, on _____ ____, 2019.[6] Ballots received thereafter, or ballots not conforming to the requirements set forth above, may not be accepted and counted.

Except as provided below, unless the ballot being furnished is timely submitted on or prior to the voting deadline together with any other documents required by such ballot, the Debtor may, in its discretion, reject such ballot as invalid and therefore decline to count it in connection with seeking Confirmation of the Plan by the Bankruptcy Court. The Debtor will notify the Bankruptcy Court of any untimely ballots.

---

[6] Date to be inserted after disclosure statement hearing.

Any vote cast to accept or reject the Plan with respect to any Claim to which an objection has been filed will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise. A Creditor's vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the Creditor's acceptance or rejection of the Plan was not in good faith or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

ii. *Claim Amounts on Ballots*

On each ballot there is a space in which each Creditor may write the amount of such Creditor's Claim. If the Claim amount submitted differs from the amount of the Claim as allowed by Final Order of the Bankruptcy Court or as shown in the Debtor's Schedules, then the dollar amount of such Claim, for voting and Distribution purposes, shall be determined first, by reference to the Final Order allowing such Claim, or if no such order has been entered, then by the lesser of (i) the amount specified in the proof of Claim, and (ii) the amount of such Claim set forth in the Debtor's schedules; provided, however, that if the Claim is not listed on the Debtor's schedules, such Claim shall be deemed to be listed on the schedules in the amount of the proof of Claim solely for voting purposes unless otherwise objected to by the Debtor. THE AMOUNT OF THE CLAIM SPECIFIED ON THE BALLOT WILL NOT SUPERSEDE THE ALLOWED AMOUNT OF A CLAIM FOR VOTING PURPOSES AS DETERMINED IN ACCORDANCE WITH THE PRECEDING SENTENCE. THE DEBTOR RESERVES ALL RIGHTS TO OBJECT TO ANY CLAIM OR TO THE VOTING OF ANY CLAIM.

iii. *Incomplete Ballots*

Any ballot received which does not indicate either an acceptance or rejection of the Plan shall be deemed to constitute an invalid ballot. The Debtor will notify the Bankruptcy Court of any such ballots.

iv. *Waiver of Defects, Irregularities, etc.*

All questions as to the validity, form, eligibility (including time of receipt), acceptances and revocations or withdrawal of ballots will be determined by the Bankruptcy Court. The Debtor reserves the right to: (i) contest the validity of any revocation or withdrawal of any vote on the Plan, (ii) reject any and all ballots not in proper form, and (iii) waive any defects or irregularities or conditions of delivery as to any particular ballot. The interpretation of the applicable requirements (including those with respect to the ballot and the instructions thereto) by the Bankruptcy Court will be final and binding on all parties. Unless waived, any defects or irregularities in connection with the deliveries of ballots must be cured within such time as the Court determines.

**C. CONFIRMATION OF THE PLAN.**

i. *The Confirmation Hearing*

The Court must hold a Confirmation Hearing before deciding whether to confirm the Plan. The Plan will not be valid until the Court has entered a Final Order confirming the Plan.

DocID: 4835-1480-4652.3

Once confirmed and to the extent the other conditions under the Plan are met, the Plan will become effective on the Effective Date.

The Confirmation Hearing for the Bankrutpcy Court to consider Confirmation of the Plan and any objections thereto, will be held on _____ _____, 2019 at _____ in Dallas, Texas in Judge Hale's Courtroom, 1100 Commerce Street, 14th Floor, Courtroom No. 3, Dallas, Texas, 75242. Any Creditor, or other party-in-interest desiring to object to Confirmation of the Plan must file a written objection with the Bankruptcy Court, and serve a copy of the objection on the Debtor and the Office of the United States Trustee, so as to be received no later than _____ ___, 2019[7].

In order to preserve an objection, anyone filing an objection to Confirmation must also attend the Confirmation Hearing, either in person or through counsel. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment of that hearing. **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## ii. *Requirements for Confirmation of the Plan*

At the Confirmation Hearing, the Court will determine whether the Plan satisfies the requirements for Confirmation listed in Section 1129 of the Bankruptcy Code. One of the requirements for Confirmation is that the Plan must be accepted by at least one of the Classes and by at least two-thirds (2/3) in amount and a majority in number of such Allowed Claims whose holders actually cast ballots for acceptance or rejection of the Plan. If the Court determines that all Confirmation requirements are satisfied, it will enter an order confirming the Plan. The Debtor shall utilize the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for Confirmation of the Plan over the potential rejection by any Class.

## VIII. ALTERNATIVES TO THE DEBTOR'S PLAN OF LIQUIDATION

If the Plan is not confirmed, the alternatives include: (i) the preparation and presentation of an alternative plan of liquidation; (ii) a sale of all or substantially all of Debtor's Assets pursuant to Section 363 of the Bankruptcy Code; or (iii) the liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

The Debtor believes that failure to confirm the Plan will inevitably result in additional administrative expenses being incurred, thus reducing and delaying Distributions to Creditors. The Debtor believes that the Plan, as described herein, fairly adjusts the rights of various Classes of Creditors consistent with the distribution scheme embodied in the Bankruptcy Code and enables Creditors to realize the most, given the circumstances.

## A. ALTERNATIVE PLANS OF LIQUIDATION.

Currently, there are no alternative plans of liquidation under consideration.

---

[7] Dates to be inserted after disclosure statement hearing.

**B.** **SECTION 363 SALE.**

One alternative, if a plan of liquidation cannot be confirmed, is that the Debtor will accept offers for the sale of all or substantially all of the Debtor's Assets and sell such Assets pursuant to a Section 363 of the Bankruptcy Code. The Debtor will make all reasonable efforts to effectively market and sell its assets through such process, if necessary.

**C.** **LIQUIDATION UNDER CHAPTER 7.**

One of the requirements to confirm a Chapter 11 plan is that creditors receive at least as much as they would under a Chapter 7 liquidation. In a Chapter 7 liquidation, a chapter 7 trustee would be appointed to liquidate the Debtor's property and pay the Allowed Claims of Creditors. Property subject to Liens would either be sold for enough to pay the Liens or foreclosed upon by the applicable Secured Creditor. Once the property was liquidated and subject to prior orders of the court, the Allowed Claims would be paid in the following order:

1.  The Chapter 7 trustee's fees and expenses;

2.  Allowed expenses incurred during the pendency of the Chapter 11 case, including Administrative Claims;

3.  Priority Claims; and

4.  A Pro Rata distribution of any remaining funds to the Unsecured Creditors.

The Debtor believes that a liquidation under Chapter 7 would result in a greatly reduced and delayed recovery to holders of Unsecured Claims because of the additional administrative expenses associated with the (i) appointment of a Chapter 7 trustee for the Debtor, (ii) additional administrative expenses related to the employment of attorneys and other professionals to assist the Chapter 7 trustee, and (iii) significant burden associated with the liquidation of health care businesses.

The Debtor's remaining accounts receivable are medical receivables that require a certain expertise to fully collect and liquidate. The Debtor believes that its current experienced collector will recover a much larger percentage of the existing receivables compared to what might be collected by a Chapter 7 trustee with no experience with the Debtor's systems or receivables. Moreover, medical receivables, even more so than other types of receivables, have a rapidly increasing collection risk as they age. Any delay in the Debtor's efforts to collect such receivables, such as the time it would take to get a Chapter 7 trustee and his professionals in place, would be detrimental and likely greatly reduce the amounts ultimately recovered on the Debtor's medical receivables, which would reduce the amounts available for distributions to Creditors.

Additionally, the Debtor's proposed Plan and Liquidating Trust Agreement would allow for a more efficient administration process, especially with respect to the (i) Claims objection process, (ii) resolution of any pending litigation, and (iii) resolution of Causes of Action, including Avoidance Actions. Unlike a Chapter 7 trustee, the Trustee will have the authority, subject to certain dollar limits, to resolve Claim objections, Claims, and Causes of Action

DocID: 4835-1480-4652.3

without seeking Bankruptcy Court approval. Moreover, in those instances in which the dollar value of the matter exceeds the authority granted the Trustee by the terms of the Plan and Liquidation Trust Agreement, the Trustee need only seek Bankruptcy Court approval if, after notice, the Creditor Oversight Committee objects to the Trustee's proposed resolution. Similarly, the Plan Trustee need only seek Bankruptcy Court authority to pay his professional in the event that the Creditor Oversight Committee, after notice, objects to the fee statements of the professionals. The administrative cost savings of removing the need to prepare, file, and attend hearings on such matters will result in significant savings and allow for greater distributions to Creditors.

Accordingly, the Debtor believes that, if holders of Unsecured Claims could or would receive anything in a Chapter 7 liquidation, these holders of Unsecured Claims would be expected to receive a significantly smaller distribution, if any, as compared to distributions under the Plan.

To determine what holders of Claims in each impaired Class would receive if the Debtor were liquidated, the Court must determine what funds could be generated from the liquidation of the Debtor's assets and property in the context of a Chapter 7 liquidation case, which would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor. Such asset amounts would be reduced by post-petition Chapter 11 administrative costs, and costs incurred by the Chapter 7 trustee, including those related to professionals retained by the Chapter 7 trustee. In order to determine if the Plan is in the best interest of each impaired Class, the present value of the distributions from the net proceeds of a Chapter 7 liquidation are compared to the present value offered to such Classes of Claims under the Plan.

D.      LIQUIDATION ANALYSIS

As a condition to confirmation of a plan, Section 1129(a)(7)(A)(ii) of the Bankruptcy Code requires that each impaired class of Claims must receive or retain at least the amount of value it would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This is frequently referred to as a liquidation analysis. This liquidation analysis has not been prepared by accountants or audited. Instead, it represents the Plan Proponent's best, good faith estimate of what would reasonably likely occur upon liquidation:

DocID: 4835-1480-4652.3

**Pine Creek Medical Center LLC**
Hypothetical Liquidation Analysis at October 31, 2019
(In Thousands)

| _ESTIMATED RECOVERY VALUE:_ | Book Value | Ch 11 Plan Value | Rate | Ch 7 Liquidation Value | Rate | Comments |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash | $ 2,314 | $ 2,314 | 100.0% | $ 2,314 | 100.0% | |
| Accounts Receivable [1] | 2,212 | 1,659 | 75.0% | 1,438 | 65.0% | Assume 10% breakage in transition to Chapter 7 |
| Other Assets | 58 | 58 | 100.0% | 6 | 10.0% | |
| Causes of Action [2] | Unknown | Unknown | - | Unknown | - | To be pursued by Trustee |
| **Total assets** | 4,584 | 4,031 | 87.9% | 3,758 | 82.0% | |
| | | | | | | |
| Wind-down expenses through confirmation: | | | | | | |
| Payroll & other admin | | (100) | | (100) | | |
| Professional fees | | (200) | | (200) | | |
| **Total wind-down expenses** | | (300) | | (300) | | Assumed through 12/31/2019 |
| | | | | | | |
| **Proceeds available at confirmation** | | 3,731 | | 3,458 | | |
| | | | | | | |
| Post-confirmation administration | | | | | | |
| Trustee fees & expenses | | (140) | | (130) | | 3% of proceeds plus expenses |
| Contingency fees & expenses | | (250) | | (250) | | |
| Professional fees | | (100) | | (200) | | Streamlined approval process under Ch 11 |
| UST and other admin expense | | (200) | | (200) | | 1% of disbursements plus other admin |
| **Total post-petition expense** | | (690) | | (780) | | |
| | | | | | | |
| **Net proceeds available to the Estate [1,2]** | | $ 3,041 | 66.3% | $ 2,678 | 58.4% | |

[1] Debtors continue to analyze accounting records for collectability of accounts receivable; outcome may affect net proceeds available
[2] Net proceeds available to the Estate will increase based on recoveries on litigation and other causes of action

Assuming that all of the asset value listed in the Debtor's Schedules was accumulated, such amount would pay in full all Allowed Secured Claims and the holders of Allowed General Unsecured Claims would receive a pro rata distribution of the remaining funds after the payment of priority claims in full. Due to the (a) unique nature of the Debtor's medical accounts receivable, (b) the need for a Chapter 7 trustee to retain professionals to assist with the collection of the Debtor's medical accounts receivable, (c) increasing collection risk associated with any delays to the Debtor's collection efforts, (d) need to continue and finalize the audit of the Debtor's books and records related to its medical accounts receivable, and (e) fact that the appointment of a Chapter 7 trustee would delay such efforts, the Debtor believes it is in the best position to continue such collection efforts to maximize the recovery for the benefit of the Debtor's Bankruptcy Estate.

Accordingly, due to administrative cost savings and the ability to realize a greater recovery on its medical accounts receivable, the Debtor's Plan provides a greater recovery on Unsecured Claims when compared to a Chapter 7 liquidation.

## IX. RISK FACTORS

### A. ESTIMATED RECOVERY RISKS.

#### i. _Unknown Claims_

As explained above, the Bar Date has been established for the Bankruptcy Case. The ultimate universe of potential Claims against the Debtor will be unknow until the Bar Date has

passed. Likewise, parties to Executory Contracts and unexpired leases that are rejected by the Debtor will have an opportunity to assert rejection claims against the Debtor. To the extent that such claims are filed and are not already reflected in the Debtor's Schedules, such claims, if Allowed, could result in the reduction of amounts available for distributions to certain Creditors, all Creditors, or certain Classes of Creditors.

### ii. _Less than Anticipated Recoveries_

As explained above, the Debtor has certain concerns with respect to its books and records related to its medical accounts receivable. The Debtor believes that it will ultimnately be succesful in collecting those of its medical accounts receivable that are not stale or invalid at a rate consistent with its historical averages. However, there is no guarantee of such success. To the extent collections are less than anticipated, the distributions to Creditors will be negatively impacted.

### iii. _Litigation Risks_

Upon confirmation of the Plan, the Trustee will be charged with pursuing objections to Claims and Causes of Action. While the Debtor antiicpates that the Trustee's efforts will result in increased distributions for holders of Allowed Claims, as with any form of litigaton there are always risks and no gaurantees of prevailing. Moreover, the costs associateed with litiagtion, both in time and money, can potentially mimimize any benefit realized by the prevailing party. Accordingly, it is possible that the Trustee's pursuit of such litigation may not ultimately yield a benefit for Creditors.

## B. BANKRUPTY RISKS.

### i. _Insufficient Acceptances_

For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan. With regard to such impaired voting Classes, the Plan will be deemed accepted by a Class of impaired Claims if the Plan is accepted by Claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class that have voted.

Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Plan Proponent reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan.

However, there can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Plan Proponent would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

DocID: 4835-1480-4652.3

     ii.    *Confirmation Risks*

The following specific risks exist with respect to confirmation of the Plan:

    a) Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time; and

    (b) Since the Plan Proponent may be seeking to obtain approval of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay confirmation.

     iii.    *Conditions Precedent*

Confirmation of the Plan and occurrence of the Effective Date are subject to certain conditions precedent that may not occur. The Plan Proponent, however, will work diligently with all parties in interest to ensure that all conditions precedent are satisfied.

## X. CONCLUSION AND RECOMMENDATION

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE AND THAT THE PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION. ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS, THUS, THE DEBTOR RECOMMENDS THE CONFIRMATION OF THE PLAN.**

DocID: 4835-1480-4652.3

Dated:  November 15, 2019

**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas  75201
(214) 999-6100 (main)
(214) 999-6170 (fax)

By: */s/ Lynn Hamilton Butler*
    Buffey E. Klein
    Texas Bar No. 24032515
    buffey.klein@huschblackwell.com
    Lynn H. Butler
    Texas Bar No. 03527350
    lynn.butler@huschblackwell.com
    Jameson J. Watts
    Texas Bar No. 24079552
    jameson.watts@huschblackwell.com

**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 (main)
(512) 479-1179 (direct)
(512) 479-1101 (fax)

**COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**

And

*/s/ Mark Shapiro*
Mark Shapiro, Managing Officer
Principal, GlassRatner Advisory & Capital Group
LLC
3500 Maple Avenue, Suite 350
Dallas, TX 75219
Direct: 469.445.1002
Mobile: 303.482.7218
Email: mshapiro@glassratner.com

DocID: 4835-1480-4652.3